UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:12-cv-53-RJC

| BRANDON LEON WILSON, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| RUDOLF RODRIGUEZ, et al., | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Briscoe, Norman, and Rodriguez (Doc. No. 27).

I. BACKGROUND

On March 19, 2012, Plaintiff filed this action under 42 U.S.C. § 1983, naming the following persons as Defendants: Rudolf Rodriguez, Detention Officer, Cleveland County Detention Center at all relevant times; Alan Norman, Sheriff of Cleveland County at all relevant times; and Darwin Briscoe, Former Investigating Officer for Internal Affairs of the Cleveland County Division. (Doc. No. 1). Plaintiff alleges in the Complaint that while he was a pre-trial detainee at the Cleveland County Detention Center ("the jail"), Defendant Rodriguez assaulted him. Specifically, Plaintiff alleges that on May 12, 2010, Rodriguez choked Plaintiff and punched him in the face while Plaintiff's hands and legs were restrained. Plaintiff alleges that former Internal Affairs investigator Defendant Darwin Briscoe refused to give Plaintiff access to reports investigating the incident. Plaintiff further alleges that Defendant Alan Norman, the Cleveland County Sheriff at all relevant times, refused Plaintiff's request to remove Defendant Rodriguez from his current position and to reinvestigate the case.

On May 6, 2013, Defendants moved for summary judgment. (Doc. No. 27). Plaintiff filed a Response to Defendants' summary judgment motion on May 30, 2013, and Defendants filed a Reply to Plaintiff's response on June 4, 2013. (Doc. Nos. 29; 30; 31). On June 13, 2013, without seeking leave of court, Plaintiff filed a Surreply, which Plaintiff labeled as a "Second Response" to Defendants' summary judgment motion. (Doc. No. 32). On July 3, 2013, in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 36). Despite requesting an extension of time in which to file a response following the Court's <u>Roseboro</u> order, Plaintiff did not file an additional response. Plaintiff did not submit any of his own, sworn affidavits in response to the summary judgment motion.[1]

## II. FACTS

The following facts are undisputed, unless otherwise noted by the Court:

On May 12, 2010, Plaintiff Wilson was incarcerated at the jail. (Doc. No. 1 at 4). Defendant Rodriguez was working in the jail's control room and released Plaintiff, along with another inmate, Antonio Auger ("Auger"), and informed them to have a seat in the booking area to await their transfer to the North Carolina Department of Correction ("DOC"). (Doc. No. 27-2 at ¶ 2: Rodriguez Decl.). Plaintiff and Auger went to the jail's booking room, but did not comply with Rodriguez' request to sit down. (<u>Id.</u> at ¶ 3). Shortly thereafter, Sheriff's Office Corporal Julia

---

[1] The only sworn statements produced by Plaintiff on summary judgment were Declarations of other inmates regarding the jail's grievance process. Furthermore, as an "Addendum" to the Complaint, Plaintiff filed his own sworn statement, dated July 6, 2010, regarding the incident with Defendant Rodriguez. (Doc. No. 11 at 10). Although the affidavit was not specifically included as part of Plaintiff's materials on summary judgment, the Court has considered it in adjudicating the summary judgment motion.

Trent ("Trent") instructed Plaintiff and Auger to sit down, but both again refused. (Id.; Doc. No. 27-3 at ¶¶ 3-4: Trent Decl.). Trent states in her Declaration that when she then "closed the flap on the transfer cell," Plaintiff "informed [her] that [she] didn't need to close the flap in his face, and that he didn't want to sit down." (Id. at ¶ 4). Trent states that she went back into the control room, "and Wilson and Auger were still walking around." (Id.).

When Plaintiff and Auger disobeyed Trent's order, Rodriguez and Sheriff's officer Jonathan Humphries ("Humphries") stepped out of the control room, and "again asked [Plaintiff] and Auger to sit down." (Id. at ¶ 5). The two men "initially refused," but when Humphries and Rodriguez began approaching them Auger sat down. (Id.). Trent states that Plaintiff still refused to sit down and "began to yell and scream at Rodriguez." (Id.). Rodriguez states in his Declaration that Plaintiff "responded with expletives" to the orders for him to sit down. (Doc. No. 27-2 at ¶ 4: Rodriguez Decl.). Rodriguez states that "[i]n order to get [Plaintiff] to comply with my order, Humphries and I placed hands on [Plaintiff], secured him to the wall, and took him to the ground, where we handcuffed him." (Id.). Trent's Declaration corroborates Rodriguez's account, stating that Rodriguez "placed [Plaintiff] against the wall while ordering him to have a seat. Rodriguez then secured [Plaintiff] to the wall, with Humphries assisting him. They then took [Plaintiff] to the ground." (Doc. No. 27-3 at ¶ 6).

Rodriguez then returned to the control room. (Doc. No. 27-2 at ¶ 4). Sheriff's officer Max Blanton informed Rodriguez that Plaintiff and Auger were ready to be sent to the Department of Correction, so Rodriguez and Humphries assisted Sheriff's officer Jerry White in placing additional shackles on Plaintiff. (Doc. No. 27-2 at ¶ 5; Doc. No. 27-3 at ¶ 7). While the additional shackles were being applied, Plaintiff stood up and spit on Rodriguez. (Doc. No. 27-2 at ¶ 6; Doc. No. 27-3 at ¶ 8). Rodriguez states that Plaintiff's "right arm was free," and "to prevent [Plaintiff]

from spitting on me again, or hitting me with his right hand, I struck him one time with a punch, and took him to the ground." (Doc. No. 27-2 at ¶ 6). Plaintiff claims in the Complaint that Rodriguez punched him in the face and choked him while Plaintiff's hands and legs were restrained. (Doc. No. 1 at 4). Furthermore, in a sworn affidavit attached as an exhibit to Plaintiff's Complaint and dated July 6, 2010, Plaintiff alleged that Defendant Rodriguez "assaulted . . . [Plaintiff] by putting his hands around [Plaintiff's] throat and strangling [Plaintiff]." (Doc. No. 11 at 10). Other than the sworn affidavit, which was not specifically made part of Plaintiff's materials in response to Defendants' summary judgment motion, Plaintiff has produced no admissible evidence on summary judgment regarding the incident between him and Rodriguez.

Trent states that when she came out of the control room, she observed Plaintiff cursing and spitting a small amount of blood on the floor. (Doc. No. 27-3 at ¶ 8). Plaintiff threatened to spit on Rodriguez again, so Trent got a spit hood to prevent Plaintiff from spitting again. (Id.). Plaintiff had a bloody lip, but refused any medical assistance.[2] (Id. at ¶ 9). As a result of the incident on May 12, 2010, Plaintiff was charged and indicted for malicious conduct by a prisoner by emitting body fluid at Defendant Rodriguez, in violation of N.C. GEN. STAT. § 14-258.4, a Class F felony.[3] (Doc. No. 27-5 at 2: Indictment).

---

[2] In his response to the summary judgment motion, Plaintiff contends that the punch from Rodriguez damaged Plaintiff's teeth, resulting in the loss of one tooth and causing looseness in other teeth. See (Doc. No. 32 at 5; Doc. 29 at 3). Plaintiff's contention, however, is not submitted in the form of a sworn affidavit, declaration, or other admissible form on summary judgment.

[3] N.C. GEN. STAT. § 14-258.4 states: "(a) Any person in the custody of the Division of Adult Correction of the Department of Public Safety, the Division of Juvenile Justice of the Department of Public Safety, any law enforcement officer, or any local confinement facility (as defined in G.S. 153A-217, or G.S. 153A-230.1), including persons pending trial, appellate review, or presentence diagnostic evaluation, who knowingly and willfully throws, emits, or causes to be used as a projectile, bodily fluids or excrement at a person who is an employee of the State or a local government while the employee is in the performance of the employee's duties is guilty of a Class F felony. The provisions of this section apply to violations committed inside or outside of the

Plaintiff was sent to DOC on May 12, 2010, and then returned to the jail on numerous occasions in 2010, 2011, and 2012. (Doc. No. 27-6 at ¶ 12: Briscoe Decl.). Plaintiff alleged in the Complaint that Briscoe was assigned to Internal Affairs and cleared Rodriguez of any wrongdoing, but has failed to provide Plaintiff with any documents regarding this investigation. (Doc. No. 1 at 4). According to Plaintiff, Sheriff Norman has refused Plaintiff's request to remove Rodriguez from his position or reinvestigate Plaintiff's allegations. (Id. at 4). Plaintiff filed this suit on March 19, 2012, while he was incarcerated at the jail.

### III. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

FED. R. CIV. P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

> c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

prison, jail, detention center, or other confinement facility.

> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting FED. R. CIV. P. 56).

## IV. DISCUSSION

### A. Administrative Exhaustion

Defendants first contend that Plaintiff's § 1983 claim against Rodriguez is barred by the Prison Litigation Reform Act of 1995 ("PLRA") because Plaintiff failed to exhaust the jail's grievance procedure before bringing this suit. The Court agrees. The PLRA mandates that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other

Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life . . . ." 534 U.S. 516, 532 (2002). In Woodford v. Ngo, the Supreme Court stated that "[p]risoners must exhaust all 'available' remedies, not just those that meet federal standards." 548 U.S. 81, 85 (2006). The Court further explained that proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. at 90. Thus, exhaustion is mandatory, and unexhausted claims may not be litigated in federal court. Jones v. Bock, 549 U.S. 199, 211 (2007). Therefore, if the Court determines that a prisoner has not first exhausted administrative remedies, the Court may not address the merits of the action. See Booth v. Churner, 532 U.S. 731, 738-41 (2001).

1. Grievance Policy

At the time of Plaintiff's incarceration, the Sheriff's Office had a formal written policy titled "Inmate Grievances" ("Policy") (Doc. No. 27-6 at 2, ¶ 2). When inmates arrive at the jail, they receive an inmate handbook, which provides a summary of the grievance policy. (Id. at 3, ¶ 4; Doc. No. 27-6 at 6: Operations Manual, Cleveland County Detention Center). The grievance policy states that an inmate can file a grievance concerning allegations of abuse, neglect, or mistreatment by staff. (Doc. No. 27-6 at 3, ¶ 5; Doc. No. 27-6 at 7, ¶ 4.a.4). If an inmate wants to file a grievance, he can request a grievance form from any staff member. (Doc. No. 27-6 at 3, ¶ 4; (Doc. No. 27-6 at 7, ¶ 5.b). The inmate may complete the grievance and place it in a locked grievance box. (Doc. No. 27-6 at 7, ¶ 5.c). The grievance must contain the inmate's name and housing location, the date and time of the grievance, a description of the incident, the detention officer involved, and the inmate's signature. (Doc. No. 27-6 at 3, ¶ 6; Doc. No. 27-6 at 8, ¶ 5.d).

Within ten days of receipt of the grievance, the sergeant or grievance officer will respond to the grievance, which will include whether the sergeant or grievance officer agrees or disagrees with the inmate's complaint, an explanation for how this conclusion was reached, and, if applicable, any action to correct the problem. (Doc. No. 27-6 at 3, ¶ 7; Doc. No. 27-6 at 8-9, ¶¶ 6.c.d). If the inmate is not satisfied with this response, the inmate may file an appeal to the Assistant Detention Administrator within twenty four hours of the receipt of the response. (Doc. No. 27-6 at 3, ¶ 8; Doc. No. 27-6 at 9, ¶ 7.a). The Assistant Detention Administrator has ten days to review the appeal, and reach a decision, which shall list whether the Attention Detention Administrator agrees or disagrees with the inmate's complaint, an explanation for how this conclusion was reached and, if applicable, any action to correct the problem. (Doc. No. 27-6 at 3, ¶ 8; Doc. No. 27-6 at 9, ¶¶ 7.d.e). This decision is final. (Doc. No. 27-6 at 3, ¶ 8; Doc. No. 27-6 at 9, ¶ 7.b). Finally, inmates are given copies of the responses to the grievances. (Doc. No. 27-6 at 9, ¶ 6.e).

2.  Administrative Exhaustion

In his Complaint, Plaintiff alleged that he filed a grievance on February 2011 regarding the alleged assault by Defendant Rodriguez, and that he appealed the decision. (Doc. No. 1 at 2). However, the exhibits that Plaintiff submitted to the Court do not support this claim. (Doc. No. 11). According to Plaintiff's own exhibits, he filed grievances on August 22, 2011, August 30, 2011, and September 25, 2011. (Id. at 4-9). However, these grievances do not report the alleged assault by Defendant Rodriguez on May 12, 2010. The August 22, 2011, grievance requests "the paperwork that you done [sic] with my malicious conduct investigation…." (Id. at 6-7). The August 30, 2011, grievance states that "[t]his is my 3rd request asking for my investigation report dealing with my claim of being assault [sic] by jail officer. [Y]ou told me the day I got arrested

you were investigating the claim and you would get back to me, that was almost a year ago and still nothing." (Id. at 4-5). The September 25, 2011, grievance sets forth Plaintiff's previous requests for the "report on my excessive force aligation" [sic] and then proceeds to threaten Briscoe with a "corruption case", among other things. (Doc. No. 11 at 8-9). As set forth in Briscoe's declaration, these were the only three grievances filed by Plaintiff while at the jail. (Doc. No. 27-6 at 4, ¶ 11). Although there is a letter from Plaintiff to Sheriff Norman dated February 7, 2011, there are no other grievances filed by Plaintiff in the jail's files. (Id. at 4, ¶¶ 10-11). Plaintiff has simply not presented any grievance submitted to the jail in which he accuses Defendant Rodriguez of excessive force. Although the August 30, 2011, grievance refers to Plaintiff being assaulted by a jail officer, Plaintiff has not presented a grievance accusing Defendant Rodriguez of the underlying alleged assault. Indeed, Plaintiff states in response to Defendants' summary judgment motion that he "saved all grievances." See (Doc. No. 29 at 1; 29-1 at 1). He admits in response to the summary judgment, however, that the only grievances he filed were on August 22, 2011, August 30, 2011, and September 25, 2011. (Doc. No. 29 at 1). Furthermore, in his Surreply, Plaintiff admits that he did not file "a grievance on record talking about the incident with Rodriguez." (Doc. No. 32 at 1). Thus, Plaintiff has expressly admitted that he never filed a grievance accusing Defendant Rodriguez of assaulting him.

Furthermore, as Defendants note, in his response to the summary judgment motion, Plaintiff does not contend that the grievance procedure was not available to him because of the jail staff's actions. Plaintiff claims that the jail inmate handbook's summary of the grievance policy does not advise inmates that they can appeal grievances. (Doc. No. 29 at 1). In support of his claim, Plaintiff submitted declarations from jail inmates Cordero Luviano, Raymond Kalbfeld, Terry Miller, and Sabastian Anderson, who all asserted that they were never made aware of the

jail's grievance policies as it relates to appeals and that they had submitted grievances that were never answered. (Doc. No. 30 at 2-5). However, the assertions by these inmates do not create an issue of fact as to whether Plaintiff filed a grievance complaining of excessive force by Defendant Rodriguez. Plaintiff's statement that he did not know that he could appeal grievances also does not create an issue of fact as to whether he submitted a grievance regarding Defendant Rodriguez's conduct.

In his Surreply, Plaintiff contends that he did not file a grievance against Rodriguez because he "was shipped back to DOC after the incident and did not have access to the formal grievance document the jail provides." (Doc. No. 32 at 1). Plaintiff states that after he was returned to DOC, he wrote a letter to former Cleveland County Sheriff Raymond Hamrick. (Id. at 2). Plaintiff claims that the letter he sent to Sheriff Hamrick was "clearly an inmate grieving about the incident with Rodriguez." (Id.). Plaintiff also states that he complained to Defendant Briscoe on September 10, 2010.

Plaintiff's explanation for failing to file the required grievance does not save his claim against Defendant Rodriguez from being dismissed as unexhausted. First, the fact that Plaintiff wrote letters to the Cleveland County Sheriff and complained to Defendant Briscoe does not excuse him from the requirement that he was required to grieve his accusations against Rodriguez in accordance with the jail's grievance procedures. Furthermore, as to Plaintiff's contention that he was transferred away from the jail soon after the incident with Rodriguez, Defendants have presented evidence that, after the incident with Rodriguez, Plaintiff was taken back to the jail on several occasions, and he had the opportunity to comply with the grievance policy. (Doc. No. 27-6 at ¶ 12). Defendants note that, even as recently as March 7, 2013, Plaintiff was incarcerated at the jail. See (Doc. No. 19).

For the foregoing reasons, Defendants have demonstrated that Plaintiff has failed to exhaust his administrative remedies as to his excessive force claim against Defendant Rodriguez. Under the strict terms of the PLRA, the Court may not address the merits of Plaintiff's complaint without first being satisfied that all available administrative remedies were exhausted. This Court has no discretion to excuse noncompliance with prison grievance procedures. Booth , 532 U.S. at 738-41. In sum, because Plaintiff did not exhaust his remedies as to Defendant Rodriguez, Defendant Rodriguez is entitled to summary judgment as to Plaintiff's claim of excessive force.[4]

### B. Claims Against Defendants Norman and Briscoe

Plaintiff's remaining claims are against Defendants Norman and Briscoe. First, Plaintiff alleges that Sheriff Norman violated Plaintiff's constitutional rights by failing to fire Rodriguez, and by failing to conduct a reinvestigation after Plaintiff complained about Rodriguez. (Doc. No. 1 at 4). Plaintiff also claims that Briscoe violated his constitutional rights by failing to provide him with internal affairs' records related to the investigation. (Id.). Both claims are without merit. A prisoner has no constitutional right to a grievance process. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Blagman v. White, 112 F. Supp. 2d 534, 542-43 (E.D. Va. 2000); Pegram v. Wingfield, No. 1:12cv308, 2012 WL 2411949, at *3 (M.D.N.C. May 21, 2012). As there is no constitutional right to a grievance process, there can be no right to have a grievance investigated or demand relief requested in a grievance. Accord Farmer v. Potteiger, Civil Action No. 3:12cv808, 2012 WL 5398627, at *5 (M.D. Pa. Nov.5, 2012) (finding that the plaintiff did not have a constitutional claim based on his dissatisfaction with the grievance process); Benge v. Sprueill, No. CVF 10-

---

[4] Defendants contend, alternatively, that Defendant Rodriguez is entitled to summary judgment on the merits, and because he enjoys qualified immunity. Because Plaintiff did not exhaust his administrative remedies with regard to the claim against Defendant Rodriguez, the Court may not address these alternative arguments but must, instead, dismiss Plaintiff's action against Rodriguez for failure to exhaust administrative remedies.

0978-LJO-SMS, 2010 WL 4237305, at *5 (E.D. Cal. Oct. 21, 2010) ("[Plaintiff's] disagreement with the Internal Affairs' evaluation does not constitute [an] actionable [claim for] court access denial."). Furthermore, North Carolina law bars Plaintiff's request for internal affairs records. Internal affairs reports are confidential, and disclosure of these reports without a court order is a class 3 misdemeanor. N.C. GEN. STAT. § 153A-98. In sum, for these reasons, Plaintiff's claims against Defendants Norman and Briscoe are without merit, and Defendants are entitled to summary judgment.

## V. CONCLUSION

In sum, for the reasons stated herein, Defendants are entitled to summary judgment as to all of Plaintiff's claims.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 27), is **GRANTED**;

3. This action is **DISMISSED** with prejudice. Plaintiff's claim against Defendant Rodriguez is dismissed without prejudice since it is being dismissed for failure to exhaust administrative remedies.[5]

Signed: 1/24/2014

Robert J. Conrad, Jr.
United States District Judge

---

[5] Because Plaintiff is no longer incarcerated at the jail, the dismissal as to Defendant Rodriguez is for all intents and purposes with prejudice.